31159.   WALKER *v.* THE STATE.

■

DECIDED JULY 3, 1946.

■

*Carlisle Cobb,* for plaintiff in error.

*D. M. Pollock, Solicitor-General,* contra.

MacIntyre, J. ■ The defendant contends in special ground 1 that the following material evidence offered by the defendant was illegally excluded from the jury: "Walter Hutchinson Jr. (who had been jointly indicted with the defendant, but tried separately) was on the stand as a witness for the defendant (now movant), had on direct examination testified that he saw one of the girls, who was with the defendant and the others as companions, go outside the S. A. L. depot, and that 'she went out by the door on the side where you catch the trains, to get a sandwich, and I went out by the other side by the street,' and that she went to the corner of the depot, and witness saw her talk to the mailman (who was the injured man and the prosecutor in the case); that he saw her talk to him 'about five minutes,' and that he (the mailman) told her to go with him, and she told him to wait until she got rid of the soldier and the others, and when she came back she said that Mr. Chandler (the mailman) was going to call the police; and that he, the witness, then went back in the back door of the depot, the girl going back into the depot through the front door. The above is the substance of the evidence objected to by Mr. Pollock, Solicitor-General." The State objected to the introduction of the evidence on the ground that the conversation was not communicated to the defendant, and that the evidence is that the defendant had no notice of what transpired (what was said in the conversation), and it would not illustrate any conduct on the part of the defendant. Mr. Chandler, the prosecutor, and Annie Mildred McCree, witness for the State, testified that they had no conversation at the time and place in question. The court allowed the witness Hutchinson to testify that at such time and place he saw them talking, but he

■

was not allowed to testify as to what was said, as such conversation was not communicated to the defendant before the assault upon him with a knife had been made, and could in no way affect or illustrate his conduct on this occasion.

The details of the particular conversation here excluded were irrelevant and immaterial, unless they come within the provision of Code, § 38-1712, which is: "The state of the witness' feelings to the parties, and his relationship, may always be proved for the consideration of the jury." If the prosecutor had ill feelings toward the defendant, that would not in any way affect the right of either. *McDuffie* v. *State* (supra). But if the prosecutor was a witness against the defendant, then the state of his feelings, or any other witness' feelings, toward the defendant may be proved for the consideration of the jury as illustrating their credibility. *Walker* v. *Rome,* 6 *Ga. App.* 59 (64 S. E. 310). But the rule relative to the procedure to prove ill feeling is that, if the witness is asked if he has ill will toward the defendant and replies in the affirmative, it is not competent to go into the particulars of the ill feeling or the cause of the hostility. To admit such testimony would multiply issues and tend to confuse the jury. Had the witness replied that he had no ill will, it would have been proper on further cross-examination to ask about an occurrence which, if true, would have authorized a finding that ill will existed. Had the witness denied that, the accused would have been entitled to prove the contrary. But this would not justify an investigation of a mere collateral issue or of the particulars of the occurrence. *McDuffie* v. *State,* supra. Here the witness had not been asked whether he had unkindly feelings toward the accused, and it was not competent to go into the details of the occurrence in question. *Patman* v. *State,* 61 *Ga.* 379; *Conyers* v. *Field,* 61 *Ga.* 258; *Robinson* v. *Murray,* 198 *Ga.* 690 (7) (32 S. E. 2d, 496). This ground is not meritorious.

■ Special ground 2 raises the question as to whether a convict must serve his minimum sentence before he can be paroled. The act of 1919 (Ga. L. 1919, p. 387) is entitled "An act to provide for indeterminate sentences, and for other purposes." Section 1 of the act provides: "Be it enacted by the General Assembly of Georgia and it is hereby enacted by the authority of the same, that from and after the passage of this act . . the jury in their verdict on the trial of all cases of felony not punishable by life imprisonment

shall prescribe a minimum and maximum term, which shall be within the minimum and maximum prescribed by law as the punishment for said crime, and the judge in imposing the sentence shall commit said convicted person to the penitentiary in accordance with the verdict of the jury; provided that in cases of pleas of guilty, then the judge shall have the right to prescribe such minimum and maximum term as he may see fit. The Prison Commission shall fix rules by which said convict, after serving the minimum sentence, may be allowed to complete his term without the confines of the penitentiary upon complying with said rules." This section is codified in the Code of 1933 as § 27-2502.

The act of 1938 (Ga. L. Ex. Sess. 1937-1938, p. 326, sec. 1), repealing the act of 1919 is as follows: "Section 1. In all criminal trials, whether misdemeanor or felony, wherein the defendant does not enter a plea of guilty, the jury shall pass only on the question of the guilt or innocence of the accused; and it shall be the duty of the trial judge to fix sentence as provided by law, upon the conviction or plea of guilt of the defendant."

The act of 1938 was itself repealed by the act of 1939 (Ga. L. 1939, p. 287, sec. 3), as follows: "That from and after the passage of this act the jury in their verdict on the trial of all cases of felonies not punishable by life imprisonment shall prescribe a minimum and maximum term, which shall be within the minimum and maximum prescribed by law as a punishment for said crime, and the judge in imposing the sentence shall commit said convicted person to the penitentiary in accordance with the verdict of the jury; provided that in cases of pleas of guilty, then the judge shall have the right to prescribe such minimum and maximum term as he may see fit." The wording of this section is identical with that of the act of 1919, with the exception of the last sentence of the act of 1919 which is not included.

The question that arises is, did the act of 1939, in repealing the act of 1938, restore or revive the act of 1919, codified as § 27-2502? It is our opinion that the act of 1938 repealed the act of 1919, and had the effect of transferring from the jury to the judge the power and right of fixing punishment in felony cases not punishable by life imprisonment. It is our further opinion that the act of 1939 repeals the repealing act, and transfers back to the jury the power to fix sentences and establish indeterminate sen-

tences, and had the legal effect of reviving the act of 1919 in all of its terms. We are therefore of the opinion that the last sentence of the Code of 1933, § 27-2502, that, "The Prison Commission [State Board of Pardons and Paroles] shall fix rules by which said convict, after serving the minimum sentence, may be allowed to complete his term without the confines of the penitentiary upon complying with said rules," was binding upon the Prison Commission upon the passage of the act of 1939, and such Prison Commission could not parole the prisoner until he had served the minimum sentence. *Harrison* v. *Walker,* 1 *Ga.* 32; *McCants* v. *Layfield,* 149 *Ga.* 231 (99 S. E. 877); *Butner* v. *Boifeuillet,* 100 *Ga.* 743 (28 S. E. 464); *Wood* v. *State,* 68 *Ga. App.* 43 (21 S. E. 2d, 915); *Camp* v. *State,* 187 *Ga.* 76 (200 S. E. 126); *Weeks* v. *State,* 63 *Ga. App.* 773 (11 S. E. 2d, 670); *Hollis* v. *State,* 48 *Ga. App.* 672 (173 S. E. 179); *Warren* v. *Suttles,* 190 *Ga.* 311 (9 S. E. 2d, 172).

The act of 1943 (Ga. L. 1943, p. 194, § 23) is a general act and provides: "The Board may adopt and promulgate rules and regulations, not inconsistent with the provisions of this act, touching all matters herein dealt with, including, among others, the practice and procedure in matters pertaining to paroles, pardons, probations, and remission of fines and forfeitures." The act of 1919, now codified as § 27-2502, so far as is pertinent to this discussion, is limited in its application to paroles and does not undertake to deal with pardons, conditional pardons, reprieves, etc. We are therefore of the opinion that the act of 1943, when construed in connection with the Code, § 27-2502, was never intended to affect the provisions of § 27-2502. This section, which requires the convict to serve the minimum sentence, was in force upon the passage of the act of 1939, and is in force now unless the act of 1943, which is a general statute dealing with paroles, pardons, conditional pardons, probations, and remission of fines and forfeitures, impliedly repealed this Code section. "Every new statute should be construed in connection with those already existing in relation to the same subject-matter, and all should be made to harmonize and stand together if that can be done by any fair and reasonable interpretation." Boyd *v.* Huntington, 215 Cal. 473 (11 Pac. 2d, 383). "Where the repealing effect of a statute is doubtful, the statute is to be strictly construed to effectuate its *consistent* opera-

tion with previous legislation." 1 Sutherland Stat. Cons. (3 ed.), p. 470 (4). "It is a principle that a general statute will not repeal by implication a former one which is special or which is limited in its application unless there is something in the general law that makes it manifest that the legislature contemplated and intended a repeal." Boyd v. Huntington, supra. Under our construction of the Code, § 27-2502, and the act of 1943, there was no implied repeal of such Code section, and it is now in full force and effect. Under our interpretation of the indeterminate-sentence law, the convict must serve the minimum sentence before he can be paroled; but under the act of 1943, the State Board of Pardons and Paroles has full authority to grant pardons, conditional pardons, probations, remissions of fines, forfeitures, etc., under any rule or regulation which they may set up under such act.

The exception here was to the following charge of the court: "In all felonies, except capital felonies, the jury, upon conviction, shall fix a minimum and maximum punishment. The defendant is required to serve the minimum sentence, but the Prison Commission has recently ruled that after serving one-third of the minimum sentence he is subject to parole and may apply for a parole." This was, in effect, charging the jury that the Prison Commission had passed a rule that the convict could be paroled before he had served the minimum sentence under the Code, § 27-2502; but the convict, notwithstanding this erroneous rule, is required under such Code section to serve the minimum sentence before he could be paroled, and the judge so charged. We find no reversible error in this charge for the reasons urged, that it was argumentative.

The general grounds were abandoned.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*